```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
ELIGIO CEDEÑO and CEDEL INTERNATIONAL    :
INVESTMENT LTD,                          :
                                         :
              Plaintiffs,                :
                                         :
              -v-                        :    09 Civ. 9716 (JSR)
                                         :
INTECH GROUP, INC., DOMINGO R.           :
MARTINEZ, PEDRO CARREÑO, JOSE JESUS      :
ZAMBRANO LUCERO, JUAN FELIPE LARA        :
FERNANDEZ, WERNER BRASCHI, GONZALO E.    :
VAZQUEZ PEREZ, RUBEN ROGELIO IDLER       :
OSUNA, RICARDO FERNANDEZ BARRUECO,       :
ALHAMBRA INVESTMENTS LLC, JULIAN         :
ISAIAS RODRIGUEZ DIAZ, EDGAR             :
HERNANDEZ BEHRENS, ADINA MERCEDES        :
BASTIDAS CASTILLO, MARIA ESPINOZA DE     :
ROBLES, ALFREDO PARDO ACOSTA,            :    OPINION AND ORDER
MAIGUALIDA ANGULO, GUSTAVO ARRÁIZ,       :
CONSORCIO MICROSTAR, INDIVIDUAL JOHN     :
DOE DEFENDANTS 1-30, and CORPORATE       :
JOHN DOE DEFENDANTS 1-10,                :
                                         :
              Defendants.                :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

This civil action brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, seeks "damages arising out of a wide-ranging money laundering scheme that utilized New York-based U.S. banks to hold, move and conceal the fruits of fraud, extortion, and private abuse of public authority" by Venezuelan government officials and their confederates. Am. Compl. at 2. The defendants are not the banks, but rather a collection of persons and entities -- many of them associated with the government of Venezuela -- who allegedly arranged to have plaintiff Eligio Cendeño

(a citizen of Venezuela) unjustifiably imprisoned for almost three years in Venezuela and who allegedly damaged his business, co-plaintiff Cedel International Investment Ltd., a company incorporated in the British Virgin Islands.  See id. at 2 and ¶¶ 1-2.  The defendants conducted their scheme, it is alleged, through an "association-in-fact" RICO enterprise comprised of "[t]he foreign exchange regime of the government of Venezuela, including CADIVI, the Central Bank of Venezuela, and the Venezuelan government agency that prosecutes alleged violations of Venezuela's laws."  Id. ¶¶ 235, 255.  The scheme's contacts with the United States, however, were limited to the movement of funds into and out of U.S.-based bank accounts.  See, e.g., id. ¶¶ 249(a), 250, 259, 262(a)-(b), (e).

It is thus apparent on the face of the Amended Complaint that, although the dreadful events alleged therein may be perfectly plausible given what is generally know about the Chavez regime, the connections to the United States may be too peripheral or problematic to support a RICO lawsuit brought here.  Unsurprisingly, then, those defendants who have been served but not defaulted have moved to dismiss the Amended Complaint on the ground, inter alia, that it exceeds the territorial limits of RICO's reach.  Specifically, defendants Zambrano, Lara, Braschi, Idler, Bastidas, and Alhambra Investments LLC have moved to dismiss on this ground.[1]

---

[1] Plaintiffs, for their part, have moved for default judgment against defendants Intech Group, Inc. and Martinez.

Any analysis of the extraterritorial reach of RICO must begin with the Supreme Court's very recent decision in <u>Morrison v. National Australia Bank Ltd.</u>, 130 S. Ct. 2869 (2010), in which the Court addressed the extraterritorial reach of the Securities Exchange Act of 1934, specifically section 10(b) of that Act and Rule 10b-5 promulgated thereunder.[2]  In <u>Morrison</u>, the Court reaffirmed the presumption that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."  130 S. Ct. at 2878.  In particular, the Court rejected the arguments of petitioners and the Solicitor General that section 10(b) applies abroad because its definition of "interstate commerce" includes activities between "any foreign country and any State."  <u>Id.</u> at 2882 (quoting 15 U.S.C. § 78c(a)(17)).  This familiar language, said the Court, was only intended to catch situations where, for example, a foreign person perpetrated a fraud in the United States.  <u>See</u> <u>id.</u> at 2882 & n.7.

<u>Morrison</u> also repudiated the Second Circuit's prior development of an "effects test" and a "conduct test" to evaluate the extraterritoriality of statutes that were silent on the issue, noting that there was no "textual or even extratextual basis for these tests."  <u>Id.</u> at 2879.  Instead, the Court concluded, one must look to

---

None of the remaining defendants has apparently been served.

   [2] <u>Morrison</u> was decided on June 24, 2010.  After the original briefing and oral argument on defendants' motions, this Court invited and received supplemental briefing on the impact of <u>Morrison</u>.

3

"the 'focus' of congressional concern" in enacting the statute, id. (quoting E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 255 (1991)), and concluded that the focus of the Exchange Act is on domestic purchases and sales of securities -- activity not present in Morrison.

Although Morrison does not address the RICO statute, its reasoning is dispositive here. "The RICO statute is silent as to any extraterritorial application," N.S. Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir. 1996), and so, under Morrison, is presumed not to apply to RICO claims that are essentially extraterritorial in focus. Plaintiffs attempt to sidestep Morrison by arguing that their complaint alleges predicate acts of money laundering that involved transfers into and out of this District by U.S. banks. But as the Court noted in Morrison, "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States," and the presumption against extraterritoriality "would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." 130 S. Ct. at 2884.

So far as RICO is concerned, it is plain on the face of the statute that the statute is focused on how a pattern of racketeering affects an enterprise: it is these that the statute labels the "Prohibited activities," 18 U.S.C. § 1962. But nowhere does the statute evidence any concern with foreign enterprises, let alone a

4

concern sufficiently clear to overcome the presumption against extraterritoriality.

Plaintiffs' superficial argument -- that since the federal statutes prohibiting money laundering are (they say) extraterritorial in nature, a RICO action predicated on violations of those statutes should be given extraterritorial application -- thus entirely misapprehends both the teachings of Morrison and the nature of RICO. RICO is not a recidivist statute designed to punish someone for committing a pattern of multiple criminal acts. Rather, it prohibits the use of such a pattern to impact an enterprise in any of three ways: by using the proceeds of a pattern of predicate acts to invest in an enterprise, 18 U.S.C. § 1962(a); by, as alleged in Count I here, using a pattern of predicate acts to obtain or maintain an interest in an enterprise, id. § 1962(b); or by, as alleged in Count II here, using the enterprise itself as a conduit for committing a pattern of predicate acts, id. § 1962(c). Thus, the focus of RICO is on the enterprise as the recipient of, or cover for, a pattern of criminal activity. If, as noted above, RICO evidences no concern with foreign enterprises, RICO does not apply where, as here, the alleged enterprise and the impact of the predicate activity upon it are entirely foreign.[3]

---

[3] The Court recognizes that this is arguably contrary to the Second Circuit's prior holdings "rejecting arguments circumscribing RICO's extraterritorial application to foreign enterprises," Alfadda, 935 F.2d at 479, because the Court of

The Court therefore grants the motion of defendants Zambrano, Lara, Braschi, Idler, Bastidas, and Alhambra Investments LLC and dismisses the Amended Complaint as to them, with prejudice. By contrast, the Court grants the motion for default judgment against defendants Intech Group, Inc. and Martinez as to liability and refers this part of the case to Magistrate Judge Andrew J. Peck to conduct an inquest on damages.[4]

Finally, since more than 120 days have passed since plaintiffs filed their original complaint against defendants Carreño, Vazquez, Fernandez, Rodriguez, Hernandez, Espinoza de Robles, Pardo, Angulo, Arráiz, and Consorcio Microsoft and those defendants have not been served, the Court, while recognizing that the Federal Rules of Civil Procedure accord a plaintiff leave beyond 120 days to serve foreign

---

Appeals found "no indication that Congress intended to limit Title IX [RICO] to infiltration of domestic enterprises," id. (alteration in original) (quoting United States v. Parness, 503 F.2d 430, 439 (2d Cir. 1974)). However, the Alfadda Court's approach is exactly the kind that Morrison found to impermissibly "disregard . . . the presumption against extraterritoriality," 130 S. Ct. at 2878. The Court therefore concludes that this Second Circuit case law is no longer good precedent in light of Morrison.

[4] The Court concludes that there is no jurisdictional bar to prevent the Court's granting the default judgments. Morrison makes clear that the Second Circuit erred in treating the extraterritoriality analysis as "a question of subject matter jurisdiction," when it is properly "a merits question." Morrison, 130 S. Ct. at 2877. Although defendants also raise as a defense the act of state doctrine -- which prevents courts from judging the acts of a foreign state within its own territory -- this is a "nonjurisdictional, prudential doctrine[]," Kadic v. Karadzic, 70 F.3d 232, 249 (2d Cir. 1995), that does not have to be addressed on a default judgment motion.

defendants, hereby directs the plaintiff to inform the Court in writing, by no later than September 8, 2010, of what efforts, if any, have been made to serve those defendants and whether the Court should dismiss those defendants without prejudice.

The Clerk of the Court is directed to close documents numbered 37, 39, 42, 54, 56, 59, 72, and 77 on the docket of this case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       August 24, 2010